UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANDREA JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20CV1102 HEA |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court for judicial review of the final decision of the Commissioner of Social Security denying the application of Plaintiff Andrea Jones for disability insurance benefits under Title II, 42 U.S.C. §§ 401-434. The Court has reviewed the filings and the administrative record as a whole, which includes the hearing transcript and medical evidence. The decision of the Commissioner will be affirmed.

## Background

Plaintiff protectively filed an application for Disability Insurance Benefits (DIB) on January 23, 2018. A hearing was held on September 18, 2019, in front of

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

an Administration Law Judge (ALJ). In an opinion issued on October 29, 2019, the ALJ determined that Plaintiff was not under a disability at any time from her alleged onset date of July 1, 2017. The ALJ found that Plaintiff worked after her alleged onset of disability, but her work activity did not rise to the level of substantial gainful activity. In her decision, the ALJ found Plaintiff had the severe impairments of left ankle trimalleolar fracture with open reduction internal fixation (ORIF) surgery; posttraumatic stress disorder (PTSD); bipolar II disorder with anxious distress; borderline personality disorder; and generalized anxiety disorder. However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. While the ALJ found none of Plaintiff's impairments met or medically equaled a listed impairment, the ALJ did find some limitations. Specifically, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform:

> …medium work as defined in 20 CFR 404.1567(c) with the following limitations: she can lift 50 pounds occasionally and 25 pounds frequently and can carry 50 pounds occasionally and 25 pounds frequently. She can sit for 6 hours in an 8-hour workday, stand for 6 hours in an 8-hour workday, and walk for 6 hours in an 8-hour workday. She can push and pull the same amount as she can lift and carry. She can never operate foot controls with the left foot. She can climb ramps and stairs occasionally, never climb ladders, ropes or scaffolds, balance occasionally, and kneel and crouch frequently. She can never work at unprotected heights or moving mechanical parts. She is able to follow simple, repetitive tasks. She is able to occasionally interact with supervisors and coworkers, but should never interact with the public.

2

Based on vocational expert testimony, the ALJ found Plaintiff could perform work such as a laboratory equipment cleaner, a stubber, and a photocopy machine operator.

Plaintiff filed a timely Request for Review of Hearing Decision on December 10, 2019. The Appeals Council, on July 24, 2020, denied the request. Plaintiff has exhausted all administrative remedies. The decision of the ALJ stands as the final decision of the Commissioner.

## **Hearing Testimony**

Plaintiff, who was represented by counsel at her hearing before the ALJ, testified she was born on June 17, 1980, making her 39 years old at the time of the hearing. Plaintiff testified that she is married and lives in a hotel with her husband, who is retired. She testified that she has a valid driver's license and drives approximately two (2) times a week to the grocery store and/or the gas station. Plaintiff has an Associate's degree. Plaintiff testified that her most recent job was working for Rose International, a temp agency, who sent her to work at the Division of Social Services doing clerical data entry and basic office functions. She began working there in December 2018 and was terminated in May 2019 due to excessive absenteeism. She testified her anxiety and depression was bad while working there, and she had trouble concentrating. The main difference between this job and many of her previous jobs was she had to be in the office instead of working from home.

Prior to working for Rose International, Plaintiff testified she held a contract position for All About Care as a medical coder between April 2017 and May 2018. Before working at All About Care, Plaintiff worked as a medical coder consistently for several different places since approximately 2008. Prior to 2008, Plaintiff testified she did data entry of fee schedules for physicians' offices between 2005 and 2006. Before that, Plaintiff worked for her sister doing voter registration and worked for Jefferson County Sheriff's Department for two years transcribing police reports.

Plaintiff testified that her severe social anxiety, depression and PTSD keeps her from working full-time today. She testified she has a primary care doctor she sees for regular health issues and a psychiatrist, Katrina Zlataric, APRN. She was seeing Ms. Zlataric once a month, but sometime between May and March 2019, she had to stop going because she could not afford it. As for medications, Plaintiff testified she takes Zyprexa, Trazadone, Prazosin, Gabapentin, Klonopin, and Vistaril and experiences excessive sleepiness as a side effect. She pays out of pocket for the medications and applied for Medicaid two weeks prior to the hearing.

Plaintiff further testified that a doctor has recommended surgery to take out screws in her left ankle that are causing swelling and pain, but she has not scheduled it due to lack of insurance. Plaintiff testified her pain level as an eight on

a scale between zero (no pain) and ten (the most excruciating pain the body is capable of experiencing).

Plaintiff further testified that her memory is okay, her concentration is not good, and crowds of people are terrifying. She doesn't attend social functions or talk to her family, except at Thanksgiving and Christmas. She has a son, but he lives with his father.

As for her activities of daily living, Plaintiff testified she goes to bed between 7:30 p.m. and 8:00 p.m. and usually gets up around 7:00 a.m. She sleeps poorly during that timeframe. She can do basic things to care for herself, like bathe and dress herself. She also brushes her teeth, combs her hair, and uses the toilet on her own. She sets an alarm to remember to take her medications. She does not prepare meals, clean, or do the dishes and laundry; her husband does. She can pick up approximately 25 pounds and walk about a half of mile before getting out of breath. She has not traveled more than 50 miles from her house since the onset of her disability. To pass the time of day, Plaintiff testified she watches television or stares at the wall. She also uses Facebook for approximately thirty minutes a day.

A Vocational Expert (VE) testified that Plaintiff's past work included a medical records coder, a data entry clerk and a dictating machine transcriber. The ALJ posed the following hypothetical: an individual with the Plaintiff's same age, education, and past jobs, who can perform work at a medium exertional level; can never operate left foot controls; can occasionally climb ramps and stairs; can never

5

climb ladders, ropes or scaffolds; can occasionally balance; frequently kneel and crouch; can never work at unprotected heights or work around moving mechanical parts; is limited to simple, repetitive tasks; and can interact occasionally with supervisors and coworkers, but never with the public. The VE testified that person cannot perform Plaintiff's past work but could perform the following jobs: (1) a lab equipment cleaner; (2) a stubber; and (3) a photocopy machine operator.

A second hypothetical added that the individual would be off thirty-one percent of the time in addition to normal breaks and four absences per month. The VE said the Dictionary of Occupational Titles (DOT) does not address this, but based on the VE's experience, there are no jobs in the national economy that allow for that.

## **Legal Standard**

To be eligible for DBI under the Social Security Act, Plaintiff must prove that [s]he is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not

6

only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). At Step One, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. At Step Two, the ALJ considers whether the claimant has a "severe" impairment or combination of impairments. At Step Three, the ALJ determines whether the severe impairment(s) meets or medically equals the severity of a listed impairment; if so, the claimant is determined to be disabled, and if not, the ALJ's analysis proceeds to Step Four. At Step Four of the process, the ALJ must assess the claimant's residual functional capacity (RFC) – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform any past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at the fourth step of process).

The claimant bears the burden through Step Four of the analysis. If [s]he meets this burden and shows that [s]he is unable to perform [her] past relevant work, the burden shifts to the Commissioner at Step Five to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national

7

economy that exist in significant numbers and are consistent with [her] impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968. Additionally, the Court must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the Court must affirm the Commissioner's decision; the Court may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *Id; see also Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).

**Residual Functional Capacity (RFC)**

A claimant's RFC is the most an individual can do despite the combined effects of all of his or her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment

8

records, and the medical opinion evidence. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010); *see also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p.

## Decision of the ALJ

At Step One of the decision, the ALJ found that Plaintiff had worked after the alleged disability onset date of July 1, 2017, but the work activity did not rise to the level of substantial gainful activity. At Step Two, the ALJ found that Plaintiff had the severe impairments of left ankle trimalleolar fracture with open reduction internal fixation (ORIF) surgery; PTSD; bipolar II disorder with anxious distress; borderline personality disorder; and generalized anxiety disorder. However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, so the ALJ's analysis proceeded to Step Four. While the ALJ found none of Plaintiff's impairments met or medically equaled a listed impairment, the ALJ did find some limitations. Specifically, the ALJ found Plaintiff retained the RFC to perform medium work as defined in 20 CFR 404.1567(c) with the following limitations: she can lift or carry 50 pounds occasionally and 25 pounds frequently. She can sit, stand or walk for 6 hours in an 8-hour workday. She can push and pull the same amount as she can lift and carry. She can climb ramps and stairs occasionally, balance occasionally, and kneel and crouch frequently. She can never operate foot controls with the left foot;

9

climb ladders, ropes or scaffolds; or work at unprotected heights or moving mechanical parts. She is able to follow simple, repetitive tasks. She can occasionally interact with supervisors and coworkers, but she should never interact with the public.

At Step Four, the ALJ found Plaintiff is unable to perform her past relevant work as a medical records coder, a data entry clerk or a dictating machine transcriber At Step Five, the ALJ found that there are jobs that exist in significant number in the national economy that Plaintiff could perform, such as a laboratory equipment cleaner, a stubber, and a photocopy machine operator. Based on VE testimony, the ALJ found Plaintiff could perform work. Therefore, the ALJ found Plaintiff not disabled.

## Statement of the Issues

Generally, the issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. The issues here are (1) whether the ALJ properly applied the pain standard based on Plaintiff's subjective complaints; (2) whether the ALJ properly evaluated the opinion evidence; (3) whether the RFC is supported by substantial evidence and by the medical evidence; and (4) whether there is a conflict between the VE's testimony and the DOT.

## Discussion

The ALJ carefully detailed her findings through her discussion of Plaintiff's impairments. As described above, this Court's role is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson*, 402 U.S. at 401; *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). So long as there is substantial evidence in the record that supports the decision, this Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001).

**Whether the ALJ properly applied the pain standard based on Plaintiff's subjective complaints**

Plaintiff contends the ALJ's reasoning for discrediting Plaintiff's testimony relating to her subjective complaints is deficient and lacks the support of substantial evidence. Plaintiff argues the ALJ erred by failing to consider the prevailing Eight Circuit pain standard relating to Plaintiff's subjective complaints. Plaintiff complained of disabling symptoms from mental impairments and difficulty walking from her left ankle pain. The ALJ did not merely reject Plaintiff's complaints of pain without an explanation. Rather, the ALJ analyzed the objective evidence in the record in reaching the conclusion that Plaintiff's complaints were not consistent with the medical evidence.

The ALJ carefully detailed her findings through her discussion of the Plaintiff's daily activities, working after the alleged disability onset date, examination findings, testimony regarding her alleged symptoms and mental impairments, and treatment. The ALJ reviewed the medical evidence and recognized Plaintiff's depressed and anxious mood during a mental status evaluation, but explained that her cooperative behavior, orientation, appropriate hygiene, ability to answer money management problems and recall items does not support the degree of limitation alleged by the Plaintiff.

The ALJ also considered Plaintiff's daily activities, such as personal care tasks, light household chores, driving, going to the grocery store, paying bills and hobbies, and determined her to be engaged in a somewhat normal level of daily activity that is inconsistent with Plaintiff's allegation of disability and the medical evidence. The ALJ pointed out that Plaintiff worked after July 1, 2017, the alleged disability onset date. Plaintiff testified that she worked from December 2018 through May 2019 doing clerical data entry and basic office functions and worked as a medical coder from April 2017 through May 2018.

The ALJ highlighted Plaintiff's physical therapy treatment for her left ankle pain after ORIF surgery, which established that Plaintiff was discharged after only one follow-up visit to a home exercise program. There was no evidence in the record that Plaintiff had any follow-up treatment. The ALJ clearly provided good

reasons supported by substantial evidence and properly applied the pain standard based on Plaintiff's subjective complaints.

In *Polaski*, the Eighth Circuit held, in evaluating a claimant's subjective complaints and related functional limitations, the ALJ should consider: the absence of objective medical evidence; the claimant's prior work record; and observations by third parties (including treating and examining physicians) regarding such matters as (1) the claimant's daily activities; (2) the duration, frequency, and intensity of pain or other symptoms; (3) any precipitating and aggravating factor; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). The Eighth Circuit recognized "[t]he ALJ is in the best position to gauge the credibility of testimony and is granted deference in that regard." *See Estes*, 275 F.3d at 724. If the ALJ explicitly discredits a claimant's subjective complaints and gives good reasons, the Eighth Circuit has held it will defer to the ALJ's judgment, even if the ALJ does not cite to *Polaski* or discuss every factor in depth. *See Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007); *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004).

Here, the ALJ acknowledged that Plaintiff does have physical and mental impairments, which warrant some work restrictions. However, the ALJ's decision to discredit Plaintiff's subjective complaints was in conjunction with the record as

13

a whole, which the ALJ adequately explained with good reasons supported by substantial evidence.

**Did the ALJ properly evaluate the opinion evidence?**

Plaintiff claims the ALJ failed to properly evaluate the opinion evidence of her psychiatrist, Dr. Katarina Zlataric, APRN. The ALJ found Dr. Zlataric's opinion unpersuasive, as it is inconsistent with the medical evidence of record. Dr. Zlataric opined since childhood Plaintiff had moderate to marked limitations maintaining concentration, persistence, and pace; understanding, remembering, or applying information; adapting or managing herself; and interacting with others. The ALJ explained the opinion evidence consistently found that Plaintiff was cooperative and oriented with normal cognition, average intelligence, intact memory, attention/concentration, judgment, and insight. The ALJ noted these findings were well-supported by the medical evidence, determining the opinions of State agency consultant Keith Allen, Ph.D., and consultative examining psychologist Jerry Cunningham, Psy.D., persuasive. Additionally, the ALJ pointed out that Dr. Zlataric's opined that Plaintiff's limitations began when she was 13-14 years old and she would be late or absent three times a month, which is inconsistent with the Plaintiff's skilled work history over long periods of time

Plaintiff appears to argue that Dr. Allen's and Dr. Cunningham's opinions are not consistent because Dr. Allen found that she was not significantly limited to carrying out detailed instructions or maintaining concentration for extended

14

periods of time, but ultimately determined simple repetitive tasks would be helpful whereas Dr. Cunningham did not conclude any of these limitations. Dr. Allen opined that Plaintiff was capable of simple repetitive tasks away from the general public. Dr. Allen clarified that Plaintiff's anxiety and depressions would likely make it difficult for her to concentrate. As to Dr. Cunningham, the ALJ specifically found his opinion and own examination of Plaintiff is well supported, however, explained the medical evidence as a whole is more consistent with Dr. Allen's finding of moderate limitations in her ability to maintain concentration, persistence and pace. The ALJ properly pointed out that Dr. Allen relied on the same general normal mental examinations she discussed that showed despite Plaintiff's reports of a depressed and anxious mood, she was cooperative, orientated, appropriate in hygiene, ability to answer money management problems and recall items, which does not support the degree of limitation alleged by the Plaintiff.

Plaintiff also argues that Dr. Allen and Dr. Cunningham did not review her entire record prior to reaching their decisions. However, the ALJ discussed the treatment notes Plaintiff asserts were not taken into consideration by Dr. Allen and Dr. Cunningham and still found the opinions consistent with the evidence.

In explaining her findings, the ALJ need only "minimally articulate reasons for crediting or rejecting evidence of disability." *Strongson*, 361 F.3d at 1070

(citing *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997). The ALJ did not improperly evaluate this opinion evidence when considering the record as a whole.

**Was the RFC is supported by substantial evidence and the medical evidence?**

Plaintiff contends that because the ALJ found Dr. Allen's opinion persuasive and did not credit his finding that Plaintiff would likely benefit from limited contact with the general public, the RFC is not supported by the substantial evidence and medical evidence. However, the RFC specifically states that Plaintiff is able to occasionally interact with supervisors and coworkers but should never interact with the public. Indeed, the ALJ assessed Plaintiff's limitations and found Dr. Allen's assessment credible. This clearly demonstrates the ALJ considered the medical opinions and actually suggested greater limitations for Plaintiff to never work with the public, instead of limited contact.

All the relevant evidence supports the ALJ's RFC determination.  She examined the entire record, and her opinion is substantially supported by the evidence before her.

**Was there is a conflict between the VE's testimony and the DOT?**

Plaintiff argues that the VE's testimony conflicted with the DOT because all three of the jobs identified by the VE have a reasoning level of two in the DOT, and that an individual who is limited to simple, repetitive tasks cannot perform jobs that have a reasoning level of two. After finding Plaintiff could not perform her past work, the ALJ relied on VE testimony and found her capable of

16

performing jobs existing in significant numbers in the national economy. In response to a hypothetical setting out Plaintiff's vocational profile and RFC, the VE identified a lab equipment cleaner, a stubber, and a photocopy machine operator as applicable jobs. Although the ALJ limited Plaintiff to performing simple, repetitive tasks, she did not restrict her to performing tasks that involve only one or two-step instructions. "[T]here is no direct conflict between 'carrying out simple job instructions' for 'simple, routine and repetitive work activity,' as in the hypothetical, and the vocational expert's identification of occupations involving [Level 2 reasoning]." *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (quoting the DOT). The ALJ properly relied on the VE's testimony to find Plaintiff capable of other jobs existing in significant numbers in the national economy and are consistent with her impairments and vocational factors, and therefore is not disabled under 20 C.F.R. § 404.1520(g). There is no conflict between the VE's testimony and the DOT.

## Conclusion

After careful review, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. *Perkins v. Astrue,* 648 F.3d 892, 900 (8th Cir. 2011).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 25th day of March, 2022.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE